1630486 Langley v. Prince I am pleased to call Richard Burke on behalf of the appellant, Ricky Langley. This is a case where if you ask the right question, you get the right answer, and the problem is that the state court did not ask the right question, the question mandated by clearly established Supreme Court law, the question mandated by the United States Supreme Court in Ash v. Swenson. And that question, the question that determines these issues of collateral estoppel is whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. That's the question mandated by the court in Ash v. Swenson and again in Jaeger. It's important that in this area of collateral estoppel, the United States Supreme Court did not simply say collateral estoppel applies as a doctrine under our double jeopardy clause and leave it to the states to determine when an issue had been necessarily decided in a case with a general verdict. The United States Supreme Court mandated exactly what form of inquiry is to be conducted under the double jeopardy clause to determine whether an issue was necessarily determined and therefore foreclosed by the double jeopardy clause. And so there are four elements of that Ash v. Swenson question that I want to unpack very quickly because they define the scope of the error in the state court, the error that permits successful review under 2254D. The first thing to note about the Ash v. Swenson test is that it is an objective test. It doesn't ask why did this jury do something. It asks what a rational jury could have based that verdict upon. So it is an objective test, not an inquiry into this jury. It asks whether a rational jury could have grounded its verdict. And so we are looking at the actions of a jury that is presumed to follow its instructions and to be determining the issues rationally, not based on issues like compromise and nullification and those sorts of things. It asks whether a rational jury could have grounded its verdict, its verdict of acquittal, could have grounded its verdict of acquittal upon an issue other than the one that we seek to foreclose. And that's critical because in this case the state court didn't ask what could the jury have based its verdict of acquittal of first-degree murder on. It asked would there have been a basis for the jury to come back with a conviction of second-degree murder. And that's the wrong question. And finally, it says whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose. And so what the court is teeing up there is an analysis of what were the issues of ultimate fact, not questions of compromise, which is not an issue, or nullification, which is not an issue. But what were the issues defined by the indictment, the bill of particulars? I know I'm just going to interrupt because time will pass and it's a complicated case. The logical, rational approach leads you to your conclusions. But at the same time, the Supreme Court is emphasizing the issue has to have necessarily been decided, and at least in one application of Ash, they say actually decided. And so if it's a fact-intensive inquiry and then we layer onto that edpedeference, why am I wrong to think that this gentleman was three times convicted? Everyone that every trier of fact that has looked at this has found him guilty of first degree, second degree, second degree. So three times triers of fact find him guilty, built on what you know the record seems, three times he confessed to intentionally strangling. It just looks like the facts are overwhelming that he did acknowledge he intentionally strangled the child. And the answer to that, Your Honour, is this, that the Supreme Court told us how to determine whether an issue was necessarily decided. It's not something that a court, whether it's the state court, the district court or this bench, can look at the evidence and sit as a 13th juror and think, well, I think that case was really overwhelming. The question is answered exclusively by the question in Ash v. Swenson. But has the Supreme Court yet clearly established how Ash is applied when we have edpedeference or how Ash is applied when a lesser included offence exists or a general verdict? What's the best case? Ash v. Swenson is clearly established law that wholly encompasses what occurred here. And what Ash says is where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court, so it's required, to examine the record of prior proceeding, take into account the pleadings, evidence, charge and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to disclose. The trial judge in this case was presented with your Ash argument. You came into the case and then you presented, and he heard it. Then we have the Third Circuit listening to it. Then we've got the magistrate reviewed by the district court. None of them have accepted that the issue of special intent was foreclosed. Would you say they all made the identical mistake, thinking compromise verdict is somehow allowed, or did they each make a different error of law applying Ash? No. I think the two State courts made the same error. Which was mercy? Mercy is the answer. They asked the wrong question. They inquired into the basis for the conviction instead of the basis for the acquittal, and they considered nullification or compromise. State courts both did — made those two errors? Yes. Okay. The district court took another different path where it asked us to prove whether a rational jury would not find Mr. Langley acted with specific intent to kill, which is just not the test at all and imposes far too high a burden on the defendant, and then acted as a 13th juror to make its own assessment of the strength of the evidence of specific intent, and then made an error in analyzing the difference between a jury rejecting the defendant's insanity defense — we didn't prove that by a preponderance — but then nevertheless experiencing a reasonable doubt about specific intent. So there were a series of errors in the district court, but I appreciate this is a de novo review. But the State court — Let me ask about the — I mean, the whole reason we're here, the whole reason this is a problem is there was a mistaken view that the kidnapping qualified under the second degree murder statute, right? I mean, that was — should the second degree murder instruction have been given at all, if there had been full knowledge that A2, what didn't work, and only specific intent second degree murder would work? Well, Your Honor, I guess I'd have to think a little bit about that. The State indicated in the third trial that it shouldn't have been, but it doesn't matter for the purposes of this panel at all, because it's the instructions actually given in that jury trial, whether they should have been — Well, I guess my question is, under Louisiana law, if you know this answer, if the State only could have relied on specific intent second degree murder, could both first and second degree murder have been given as options to the jury, even though they had the same elements, I guess, except for the youth, the minor part? Yes. They could have. So a jury does not — but didn't the instruction here say you can only find second degree murder after finding no first degree murder? Yes. So in that situation, if they both had to be specific intent, why could the jury have been instructed on both? The — The jury — so the jury does have some sort of nullification or mercy discretion. We are, with respect, drifting far away from this case. Well, I know, but I'm trying to figure — it makes me think about how the first and second degree murder really work together. So let me be frank. I don't want to answer your question, but I'm going to. It's often the case, right? The answer is this. Actually, under Louisiana law, responsive verdicts, the lesser included verdicts, must be given, and Louisiana law recognizes the right of jurors to return a lesser verdict, even when satisfied beyond reasonable doubt of the greater. However, that was — Why doesn't that — now we get to this case. However — Why doesn't that impact Ash? However, that was not what this jury was instructed. This jury was not told that. Had the defense asked for an instruction to that effect, they could have gotten one. Had the prosecution, they could have gotten one. Because here the instruction said you must first decide first degree murder. Right. So your case hinges on that part of the instruction. Yes. If the correct instruction had been given of, it's up to you, if you think it's better to give second degree murder, go for it, then you wouldn't have the factual finding. No, Your Honor, I wouldn't agree with that, because even in a system like Louisiana — and Louisiana is hardly unique in accepting the fact of nullification — even if you have that, the United States Supreme Court has made it clear that the test announced in Ash v. Swenson, based on the objective test and the issues in dispute, is the one to be applied. And any test more technically restrictive is barred. And that's any test more technically restrictive would, of course, amount to a rejection of the rule of collateral estoppel in criminal proceedings, especially where there's a general verdict. The United States Supreme Court has not placed upon — has never placed upon the defendant the burden of excluding the possibility of nullification or an irrational verdict. Instead, the United States Supreme Court has said, in order to give full effect to the Double Jeopardy Clause, we will assume a rational jury, and we will look at the issues presented and the issues decided. Is that altered factually here by the trial judge's comment about having spoken to the jury? Absolutely not, for three reasons. One is that it's an objective test. It doesn't matter why those 12 people did what they did. That's not the test. The second is, we don't impeach — Although — and let me just pause on that. If you have time, the two cases I want you to talk quickly about are why Powell wouldn't be existent here. Because if Powell's saying, once you know the jury acted irrationally, Ash doesn't apply. And you could say here, we know they acted irrationally because the judge spoke to them and they said that they did it as for mercy. And so, I'm going to address Powell in one second, but just to — it's an objective test. We don't look at that. We don't accept evidence about what happens in the deliberations to impeach verdicts or undermine verdicts, which is what this will be. And the third reason is that we went and interviewed the jury. And given an opportunity of an evidentiary hearing, we might put on a case that they nullified insanity because they never wanted our client released. It's not what we do, though. But to turn to Powell — and it is an important distinction — the rule in Ash v. Swenson does have an exception. There is an exception where the United States Supreme Court has said, we're not going to give preclusion effect because we think it might have been irrational. There's only one exception. And that is when the two verdicts are irreconcilably inconsistent. And the United States Supreme Court has described — And it would be had there been no felony murder? We wouldn't — no? I don't think so. That's — I want to analyze it a little more closely, but I don't think so. And that's not where we were. I know. But the thing is, the United States Supreme Court has defined what it means by inconsistent verdicts. It doesn't mean the state's saying, I thought we had a really strong case on specific intent. That doesn't make sense. It's a conviction on one count and an acquittal on another where both counts turn on the very same issue of ultimate fact that the defendant seeks to preclude. And that is not what we have here. Because specific intent was required for first-degree murder and was not required for second-degree felony murder. And so that's — this is not an inconsistent verdict case. You're highly prepared. You've been litigating this for a while. So if you don't mind, if you could add three minutes to both sides. I have a few more questions in that regard. When you say we know specific intent was decided, it is an unusual verdict form. The capital murder wasn't found acquitted. It was left blank. That makes me wonder whether Shiro — is that how we pronounce that case? Shiro v. Landry. — would be applicable here. No, Your Honor. The — under Louisiana law, that is the only way that a jury can return an acquittal of first-degree murder and a conviction of second-degree murder. They are not to enter the words not guilty of first-degree murder. And the Louisiana Supreme Court, in this case, found that this verdict operated as an acquittal of first-degree murder. That's true. So — but would that apply? Would — Ash would be a question of federal law. And even pointing to the Supreme Court's ruling there, they then remand saying for prosecution on second-degree murder, citing the subsection for special intent. Was there no issue of relinquishment of an Ash issue to get away from a capital murder? That issue wasn't presented to the court at all. The issue before the court was purely a core double jeopardy claim, we beat the first-degree murder. And the fact is, we beat specific intent. That's what that whole trial was about. We tried for insanity, but capital juries don't return insanity verdicts. They almost never do. But we put all of those eggs in the special intent basket. That's what Phyllis Mann's closing argument was all about. This was exactly what we asked the issue — the jury to do. And we won. They had a reasonable doubt about it. And that victory has been snatched back and we've been retried on the same issue we won. And that's exactly what the double jeopardy clause doesn't allow. And Your Honor, the United States Supreme Court — I understand that the state feels like it has to take some pretty bitter medicine with the double jeopardy clause sometimes. But we have a clear rule, and we shouldn't be looking for ways around the corners of it. Wouldn't it be relevant if, in that second trial at the jury charge conference, specific intent was, at best, confusedly described relating to both first-degree murder and second-degree? Because at one point, the district court says — the trial court says, you don't even need to find specific intent for second-degree murder. And then everyone's scrambling because that's wrong. And then the defense attorneys are telling the jury, no specific intent, no capital murder, implying to the jury again, you can get them on second-degree murder, wrongly, without specific intent. No, Your Honor. It wouldn't. It wouldn't for a couple of reasons. One is, in this case, they provided the written instructions with the correction, and all of the case law, state and federal, says that anything like that corrects any misstatement or shortcut the judge took. But the second is, Mr. Langley's entitled to his full double jeopardy protection, even if this court thinks that the jury's verdict of acquittal was clearly erroneous, even if it was based on a clearly erroneous error of law, and that's feng-fu, I think it is. It doesn't matter. This is in the Constitution. We get this. And applying the test, this court should, in my respectful submission, agree that it meets the Ash v. Swenson test. This conviction is jeopardy barred. The state can go back to state court and see what they can do with Mr. Langley not proceeding on this charge, but they can see what else they can do. Thank you. Good afternoon, Your Honors. Carla Sigler on behalf of the state of Louisiana here for Warden Prince. I'd like to start with a case that the petitioner cited in his reply brief, De La Rosa v. Linnall, 817 F. 2nd 259, and it was Judge Wisdom who set forth the two-step analysis, the very man who this courthouse is named for, said that what we're first supposed to look at is the courthouse to determine what facts were necessarily decided based on rationality and realism, and then you look to see whether or not the government attempted to relitigate those issues at the subsequent trial. We are jumping ahead a step because Let's start at that first step. How do you explain the acquittal on first-degree murder and the conviction on second-degree murder? The first-degree murder, okay, there's something that I did not think about until I was preparing for this yesterday. It always happens. You think I should have argued this in the brief. One of the issues that is before us in that first inquiry is whether or not there was another basis upon which the jury could have decided second-degree murder, and one of the issues that it is discussed within the Third Circuit opinion is the fact that the defendant never conceded second-degree kidnapping. First-degree murder in Louisiana was based on two aggravating circumstances in this case. Child under the age of 12, which they conceded. Second-degree kidnapping with specific intent, both of them, they never conceded the second-degree kidnapping. If you look at Tabs 6 and 7 of the closing argument made by the defense, and both Ms. Mann and Clive Stafford-Smith argued this, they say there is no second-degree kidnapping here. Then they go in and they concede when they were, the jury was instructed on felony murder doctrine, no specific intent. Whether that was accurate or not is not before this Court. Whether that was a proper instruction. But so you're saying the second-degree murder conviction was a felony murder conviction? It was. That is exactly how it was presented. Okay, well, I think that's what the other side is saying, too. So what was lacking in first-degree murder? When they rejected first-degree murder, what isn't, isn't specific intent the only challenged element? Specific intent is not the only challenged element. The other challenged element is second-degree kidnapping and cruelty to juveniles. Let's not forget that cruelty to juveniles was conceded by the defense in their closing argument. That's in Tabs 6 and 7 of the materials that the defense submitted to you. The bottom line is they go through the closing argument and they say, okay, there's no second-degree kidnapping theory. Whether, you know, that was appropriate or not, it was not challenged by the defense. It's waived now under Code of Criminal Procedure 841. However, the state discussed the second-degree kidnapping. There's no question that second-degree kidnapping was at issue because the defense never conceded it. They said, yes, the child's under 12, yes, he killed him. But there was still a valid first-degree murder charge, first-degree murder based on specific intent to kill and second-degree kidnapping. Then when you go to second-degree murder, what the jury was charged was they were charged about felony murder doctrine with no specific intent. Wait, I'm just not sure. I want to make sure I'm following you and you're talking pretty fast. On first-degree murder, they can do the specific intent plus second-degree kidnapping. That's one way to get there. Yes, sir. But they can also do specific intent to kill upon a victim under the age of 12. Everyone agrees the victim under the age of 12 was conceded. That wasn't an issue. That was not. So why didn't they convict on, I think it's A-5? Isn't the only reason because they didn't find specific intent given that the age was met? No. I don't think you can say that at all. And the other issue I have to say — Okay. Why? Why am I wrong? Because — okay. Well, first of all, because we go back to the principle in Garcia v. Dredke and all these cases, Federal cases, that say this Court is not to use extrasensory perception to try to guess what the jury did. Guess what we have in Louisiana? We have a general verdict sheet. And that's it. Yes, sir. Slow down. We have a general verdict sheet. Let me maybe try to get at the same point. Okay. Your position is that specific intent was not necessarily decided because the jury didn't decide specific intent because they did do a compromise mercy ruling, or you're not arguing that? Yes or no? I'm arguing that there's multiple venues that the jury could have reached to get to that. Is there some legitimate venue around Ash preclusion that the jury did a mercy verdict? Is that valid under law like ours, like the Green decision? I think that the bottom line is, when you look at the rationality and realism review that a court is supposed to conduct, in which they look at all factors, even if you don't use the word lenity and compromise, even if that's not supposed to be looked at, you're supposed to look at every factor, every factor in this case. The bottom line was — I'm trying to get to what you think the strongest way we would know, this jury didn't decide specific intent. Is it because they decided on mercy? Is it because, in fact, once they said not guilty by reason of insanity, we know therefore they didn't find he lacked specific intent? Or is it because the jury has a completely mutually inconsistent verdict that, yeah, they may have decided it, but they decided it inconsistently, so under Powell, we don't get credit. My thinking, so you know where I'm going, is you've just agreed with them that they did do a valid ruling under felony murder. You aren't arguing a Powell exception. I doubt you're going to be arguing that, well, because they had mercy, we're out of ash. That seems inconsistent. So it somehow has to be that this verdict doesn't rest on a special intent. I think you're right. I'm not arguing that we're precluded from considering that. I'm not arguing that we're out of ash at all, because the bottom line is, what we're not even looking at here is the fact that the burden on issue preclusion and collateral estoppel rests on the petitioner. The petitioner has to show that the issue was decided in his favor at the first trial. As you stated earlier, three courts, I believe it was you or Judge Costa, three courts stated otherwise. Three courts came to that conclusion. When you look at the... Okay, let's go through the courts then. The state court said no for what reason? And are you defending that reason? I am defending that reason. What's the reason? They said it for three separate reasons, one of which this court doesn't like. First reason they said was specific intent to kill was not at all negated. They went through the fact that they rejected the insanity offense, whether you play that into it or not. Then they said it was also possible they found no specific intent to kill, felony murder doctrine. And then they say third possibility, lenity. Basically, they refer to jury nullification, which is... Look, the bottom line is the other thing that was... This court, I would ask them to go back to the jury instructions, which I'm sure that they looked at. But the bottom line is the jury was instructed, not as he said, first you look at first degree murder, then you decide no. You just described the three lines of thought. Which one does the government say is the most defensible? The most defensible position is the fact that... Of the three you just said? Of the three I just said, the most defensible position is the fact that second degree kidnapping, specific intent was not conceded by the defense. Second degree kidnapping was never conceded. Second degree kidnapping was part of the second degree murder, felony murder doctrine that was given to the jury as the instructions. So was cruelty to a juvenile. And they conceded. But where does that get you, saying that they could find felony murder? The issue is why did they acquit on the capital murder? And the issue before this... That's what I come back to. I mean, they could have found second degree kidnapping as capital murder, but under five, the only elements as I see it, correct me if I'm wrong, this is, I mean, this is obviously crucial. The case hinges largely on this. It's killing of a human being with the specific intent to kill upon a victim under the age of 12. Of those three, if they didn't find him guilty of capital murder, they had to have rejected specific intent. Or tell me why I'm wrong. Your Honor, I... What other of those... There's three... You agree there's three elements? I agree that both of those elements of first degree murder required specific intent to kill. You're right. Specific intent to kill... No, you tell me. What are the... Under five... Tell me what elements I'm missing. Killing of a human being, specific intent to kill, age under 12. What am I... Am I missing anything? No. The other one would have been second degree kidnapping. Those were the two aggravating circumstances the state was relying on. Right. But I don't see what... I don't see what the kidnapping has to do with it when they could have found him guilty of capital murder with just those three elements. They could have found him guilty with... And they didn't. So which of the three did the jury reject? Well, and that's the whole point of this analysis and the reason why we're before this Court and why the case law on this says we don't rely on the ESP. We look at the record. We look at what was argued. You look at the elements and you look at what was argued. So tell me what was argued. What was argued and challenged of those elements? The elements that were challenged with regard to the child under the age of 12, that was conceded. Right. That was conceded by the defense. So knock that out. The jury didn't disagree with that element. Specific intent was argued entirely by the defense. The entire argument was that it was negated by the insanity defense. It was intertwined with that. That was the entire argument. They made it. That's one of the things that the Western District Court found, which if you go back and you look at the closing argument and the argument that was presented and the evidence presented by the defense, they hung their hat on one thing, the insanity verdict. But you agree of those three elements, I'm sorry, only specific intent was challenged, of killing, age, specific intent. Which was challenged? Of that particular one, specific intent was challenged. But we're still not looking at the kidnapping. We still have to look at that. I don't understand why that matters because the jury didn't need to, they could have found him guilty just under specific intent to kill a kid under 12. We still don't. The bottom line is we still can't tell from a general jury verdict in the state of Louisiana when there's no delineation and this is the verdict you get in every capital case, it's precisely what they decided on. And that's the whole point. This is supposed to be very deferential. It's a state jury court verdict. This is a highly deferential standard of view that this court is supposed to get. But deferential can't be wrong. And so when you just embrace the Western District's analysis saying the only argument made as to state of mind was insanity, I bet I've gone through this record. That's just flatly wrong, counsel. Over and over again they said, find him insane, but keep in mind this proof also goes to intent. Different standard of proof, different burden of production, they're totally different. They emphasize this is a case about madness, that was the opening line in the closing of the first trial, but they constantly preserved that the government also had to prove beyond reasonable doubt specific intent. You've just said no, they only argued insanity? They did argue, no, no, no, I don't think you're understanding what I'm trying to say, Your Honor. What I'm saying is their argument against the specific intent was intertwined with the insanity defense. That's what they said over and over. But that's fine for a defense attorney to do. One is the burden on the government, the other one's an affirmative defense. They're totally different and different levels of convincing force to prove them. We're still overlooking the fact that we have a general verdict form here. And you mentioned earlier the question that Judge Gray posed to the jury, and I looked at it again because at first I thought, oh, well, he was kind of saying, no, they rejected the insanity defense. He doesn't say anything specific with regard to secondary murder, which is the question we're here on. We're here on, was the secondary murder allowed to be presented to the trial court at the third trial? Well, it was, but then in the middle of that third trial, you gave up the felony murder. The verdict, the secondary kidnapping was not added to the first degree murder statute until 1997. Oh, there may have been, the predicates may not have been there. That, I mean, that was the bottom line. We checked the verdict forms, they were not, I mean, we checked the 1992 statute versus 1997. At that point, you were on notice that Mr. Burke had preserved over and over again his ash objection to the straight, specific intent secondary murder case. The ash objection has been rejected by three different courts using the same precedents that this court talks about, Dowling v. United States, Ash v. Swimson. Every court that has looked at this issue has looked at the proper analysis of it. This court is only supposed to grant relief if there's an objectively unreasonable . . . A circuit application of ash is the closest to the analysis that would give you the outcome you request. I don't know that there is . . . you asked earlier whether there was a case that's . . . you basically asked Mr. Burke if there was a case quite like this. There's not. There's not one. Okay, let me ask it differently. Is the government relying on the Shiro decision? I did look at Shiro. I do . . . Have you ever relied on it until your statement now that you looked at it? Have you ever asserted that as a reason that ash doesn't apply? I don't know that we . . . I know that Shiro has been discussed in the briefs. I don't have the briefs directly in front of me now, but I believe that we cited it under the . . . What's your argument under Shiro? Well, the argument is . . . you know, I still think we get back to the fact that . . . you're looking at a . . . this is a very difficult doctrine to apply in a capital murder case where, by the way, juries all the time come up with compromised verdicts. Whether you want to recognize that in the federal analysis or not, that's what they want to do. Okay, stop right there, counsel. I 100 percent agree with you, but it appears the law doesn't allow that as an escape from ash unless you can give me any case that says compromised verdict removes you from the analysis ash does. I don't think . . . what I'm trying to say is I still think it goes back to the realism and rationality argument that Judge Wisdom espoused in De La Rosa v. Lena back in 1982. You still . . . The real reason this predicament exists isn't just because of ash, which you're right, it's complicated. It might not recognize reality. I mean, here we actually know from the judge talking to the verdict, the jury's not even guessing what they did. It's we know. But the case law does say you probably can't look at that. But the real reason we're in this situation is because of the problem with the predicate on second-degree murder being mistaken. I don't . . . I still think you go back . . . this is what I'm confused about. I still think we're jumping ahead in that analysis when we have a general verdict form to say that this issue was precluded by a jury that just said signed right by second-degree murder. That's all they said. What about the instruction that said first decide, only go to second if you don't find first? No, I disagree with that interpretation of the jury instruction. If you look at what . . . and these are standard juries. What did it say? What exactly is it? It says it's . . . well, I have it at the binder. It was in tab . . . it's one of the tabs submitted by the defense. But basically, it says they . . . this is how it always does. All jury instructions are done like this in Louisiana. You define the offense charged, then you go, if you don't find this, then you can find . . . you know, you basically say beyond a reasonable doubt. There's . . . there's no question that a jury can look at those jury instructions, jump around and decide, okay, we're going to go with this one. This jury . . . we're not looking at everything that actually happened here. This jury knew that they were going to have to sit through a . . . So you're saying the finding of second-degree murder is not a rejection of first-degree? Absolutely not. Especially when the second-degree murderer that was charged . . . But you're not saying the specific intent standard is any different? The specific intent standard is the same in Louisiana law, regardless . . . I mean, it's the same instruction in the jury instructions. It's the law. What I'm saying is, my understanding of this analysis is that the petitioner has to prove that the issue was decided in his favor at the first trial. He . . . in this case, the second trial. He has that burden to prove. We don't. The bottom line is . . . That's why I was going through those three elements of first-degree murder, and it seems to me the only one of the three that was contested was specific intent. But you're not looking at the second-degree kidnapping, Your Honor. The second-degree kidnapping was what was espoused within the second-degree murder trial. I agree that's an alternative way to find first-degree, but . . . But . . . They would have had to consider both. They would have had to reject both. They would have had to consider both. You're . . . This court, I believe . . . I understand the difficulty, okay? We have a general verdict form, but we also have the incredibly deferential review that's supposed to be accorded to state court decisions. The bottom line is, there are several avenues by which that jury could have reached this general verdict. One of them was specific intent to kill. One of them was felony murder, dropping without specific intent to kill. If we can't say, and if the petitioner's burden to prove, if he can't say, this is why we decided that, the first step of the inquiry fails. But is that saying whenever you've got a general verdict, there can never be ash preclusion? I certainly cannot fathom every possible issue, Your Honor. What I know is that we had a capital murder case. Capital verdicts do not necessarily come back first-degree murder just because we proved stuff. There are cases all the time. I've been a prosecutor 15 years. There are cases all the time where I know we've met our burden of proof, and for whatever reason, the jury comes back with a lesser response to the verdict. That happens. It happens to all of us. Anybody... And that prevents you from recharging the more serious offense the jury didn't find. We don't have, Judge Costa... And on any issues that are decided within it. We don't have anything saying... By your theory, by your theory, why can't they even just recharge the first-degree murder? I mean, forget about issue preclusion. If that... I mean, it seems to me the implications of saying, well, the juries are just disregarding the law, which happens, of course. Look, I tried that. The Louisiana Supreme Court rejected that argument. I tried to make a compelling argument at that point. Let's also understand something else, and we're going to talk about rationality and realism. You're supposed to look at everything that has happened. We had a judge that was saying actively during jury selection, I don't believe the death penalty. Do you? Then he was absent, which is why we even got the third trial, because it was declared a nullity. I had argued for it to be a nullity. What do you want us to do? Erase that? I mean, erase that. The first trial was thrown out because of the grand jury discrimination. I mean, that's what we're stuck with. I mean, what do you want? I understand certainly the fortuity of events here is very unfortunate. Certainly there is very strong, compelling evidence of what is a terrible, heinous crime. You don't have to convince us of that, but the issue is double jeopardy, even where we are now. The issue... I don't see how we get to double jeopardy when we had argued about second-degree kidnapping and cruelty to juveniles under the second-degree murder, felony murder doctrine, which they conceded. They conceded cruelty to juveniles was committed. It was clearly there. I mean, this... You're talking about a child that was enticed into a home by the petitioner, led upstairs, molested, strangled with a trout line, had his sock stubbed down his throat. That met the burden of second-degree kidnapping and cruelty to a juvenile right there, one of which they conceded in closing argument. That right there... You keep coming back to this, and somehow it's got to clear up my... Why is that relevant? Why isn't that actually arguing against your case? If you didn't have the second-degree felony murder, you would have a Powell predicament. You'd have inconsistent verdicts. You wouldn't be dealing with Ash. But the more you say there was a basis for this felony murder, the more we've got to try to figure out what's the consequence of the acquittal on the capital murder, and therefore I would think it has to be... There can't be specific intent second-degree murder. How can you... Okay. The acquittal on the capital murder, you're talking about... First of all, we have two bases for the second-degree murder. We have second-degree kidnapping and cruelty to a juvenile. We haven't even talked about the cruelty to juveniles a lot, but that is a whole separate basis for the second-degree felony murder doctrine that the jury could have returned with. That's the bottom line. Second-degree kidnapping for aggravated circumstance, child under 12. Okay, so obviously they conceded about the child being 12. Second-degree kidnapping, they disputed it. Maybe they didn't decide it on second-degree kidnapping. Maybe they decided on cruelty to a juvenile. My goodness, the defense certainly conceded it and closed an argument. I thought that was pretty telling right there. There's no question that with what was done to this child, there was cruelty to a juvenile. I don't think that there's any question. That definition was... So you had a felony murder conviction, and then you dismiss it. What happened at the third trial, we still have to get... I still don't see where this court is saying with the general verdict form that we know what happened with the secondary murder verdict that was returned. And the whole point of the case law is that if you can't predict, if you don't know how they got there, you look at what you have, and if you can't mind-read, we're not supposed to guess. This is supposed to be a matter of only an objectively unreasonable either application of federal law controlling precedent in the United States Supreme Court or objectively unreasonable determination of facts is supposed to allow for the interference or the allowance of... The only court that clearly established Supreme Court law we're looking at is Ash. And you haven't given me a case yet that says this case is why we aren't in the world of Ash. You just keep saying wisdom said we have to look at this realistically, and realistically we just don't know. Ash says that too. Ash talks about looking at the entirety of the record. And there's something else that needs to be pointed out that I don't know that was discussed in the brief. This was a second-degree murder appeal that went up to the Third Circuit. By law, the second-degree murder appeal required the court to look at the entirety of the record. They looked at everything. They had voir dire. They had the jury instructions. There were some issues raised by Petitioner that, well, the Third Circuit Court of Appeal didn't look at everything they were supposed to. Not only did they have to look at it because that's the nature of the assondere that they raised, but they also cite Dowling v. United States in their opinion. Do you draw any base foundation from the Third Circuit's reference to that Mayo case? Do you remember the paragraph? I do. I think I have it. What's the logic that they were speaking of? Let me find it. If you'll indulge me, let me turn to that section. It was the paragraph that preceded the Ash analysis. It makes sense to me. I just wanted to know if it made sense. Here we go. Okay. Are you talking about the one where they say we were allowed to go back for secondary murder? That went well. It is true the Supreme Court did not discuss the issue regarding intent. Okay. I think that what they were saying there, the way I interpreted that, is what we all know. The bottom line is this was a trial. This was such a bizarre circumstance. This was a trial that was declared a nullity. It would be unfathomable to anybody that a judge leaves the courtroom, the defendant argues that it's reversal error, and that we can't go back. The Third Circuit was notifying us in its opinion, which is exactly what the Louisiana Supreme Court said, that the secondary murder can go back. That's what the Louisiana Supreme Court said when I tried to bring it back for first-degree murder, saying, okay, if it's a nullity, we should go back to everything. That's what they said. That was what I interpreted. Thank you. Your Honours, there are only two things I wanted to address and obviously respond to anything else that's arisen. The reference to the approach being one based on rationality and realism in Ash v. Swenson and Jaeger, that is a reference to protect the defendant. That's not, let's be real and not give the defendant the benefit of double jeopardy. You'll see the court in Ash cites to, I think it's Seal Fund, that's a case where the state tried to engage in technical pleading about what was technically before the jury as opposed to what was really before the jury. That passage is a shield for the defense, not a sword for the prosecution. Is there any epideference to a fact-finding that was made by the state courts that specific intent was never conclusively resolved? No, Your Honour, because that is not a fact-finding. That is a finding of law applying the test announced in Ash v. Swenson. We don't try to determine the fact of why these 12 people made it. We engage in a legal analysis applying the Ash v. Swenson test. Even if it's very counterfactual? Well, I disagree with that, Your Honour, but we won that trial. That's how we beat the first-degree murder and we shouldn't have to relitigate it and persuade you here. One of the other things, this idea that the only challenge to specific intent was the argument that he was insane or the same factual basis. Obviously, it's a different test and a different burden, but that's not even true. That's fine. You don't need to stay on that. Maybe you heard huge emphasis put on the second-degree kidnapping as being the escape valve here. It is a complete red herring for the reasons that both Your Honour and Judge Costa pointed out. Well, I made points, but I began to confuse myself making them. Because there was a first-degree murder under five that had three elements, killed, which was conceded, child under 12, which was conceded, and specific intent to kill. Disputed. Disputed. It doesn't matter that, in addition to child under 12, there was an aggravated kidnapping as a backup for the State because child under 12 was conceded. So there was another path to a first-degree murder conviction if we proved the child was over 12, but that element was conceded. And so it is a red herring because the jury necessarily, applying the test in Ashe, and I believe, as a matter of fact, the jury necessarily was not satisfied beyond reasonable doubt of specific intent, was not satisfied that this mentally ill, confused man actively desired the killing at that time. Here's a broad, hard question maybe you prepared for. Ashe was announced a while ago, and the Supreme Court seems to have been cutting back on it in Shiro and Powell over and over again. Does that throw into doubt sort of the reliance on the original rational juror principles articulated? No, Your Honor. Ashe v. Swenson is the law. Only the Supreme Court can overrule its own law. I know Justice Thomas thinks it was wrongly decided and that they should take an opportunity to reconsider it one day, but it is the law. What's our court's best application of it? I'm sorry? What's our court's best binding application on us of Ashe? I think any of the three examples we gave in the reply brief, Green, De La Rosa, and Neal, they're slightly factually different, but they all deal a death blow to the State's argument because they all agree with the clear language of Ashe that it's an objective test with a rational jury. The defendant doesn't have to disprove compromise. That's not part of our burden. And the State court said it could have been a specific intent second-degree conviction. Can I interrupt there? Has the Supreme Court ever said that, that final little point of jury nullification? I believe they said it in Ashe v. Swenson and in Jaeger when they affirmed the test in Ashe v. Swenson. They specifically said it has to be based on a rational jury. Otherwise the double jeopardy protection of collateral of estoppel goes out the window because you can't presume or assume that it could be anything else. I will just say this, that Ashe was affirmed again in Jaeger. Powell is the exception for irreconcilably inconsistent verdicts. The court addressed that again last year in Bravo v. Fernandez, but it's not what we've got. That was where the inconsistent verdict was then reversed. We're not there because there's nothing inconsistent. First degree required specific intent. Second degree did not. That was the contested element. That was the whole case. We won, and we can't be stripped of that victory as the State Court has done it.